UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



FILED

APR 1 9 2018

CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel.<br>DR. JOHN A MILLIN; and<br>DR. JOHN A. MILLIN, individually,<br><br>Relator,<br><br>vs.<br><br>LARRY F. KRAUSE, an individual; and<br>KRAUSE-ALLBEE TRUCKING, INC., a South<br>Dakota Corporation,<br><br>Defendants. | 1:17-CV-01019-CBK<br><br><br>ORDER |

## BACKGROUND

On behalf of the United States and himself, Dr. John A. Millin ("Relator," together with

the United States, "plaintiffs") filed suit on July 18, 2016, against Larry F. Krause and Krause-

Allbee Trucking, Inc. ("defendants") in a *qui tam* action under the False Claims Act ("FCA"),

Title 31 U.S.C. § 3729, *et. seq.*, as amended, to recover damages and penalties related to

defendants' alleged false claims for payment to the United States Department of Agriculture,

Farm Services Agency ("FSA") in connection with farm subsidy payments, farm disaster

payments, and loans for farmers. Relator alleges that defendant Krause misrepresented the

ownership of Krause-Allbee Trucking by submitting filings to the FSA stating that Relator and

his then spouse, Lori Millin, maintained ownership interests in Krause-Allbee Trucking, when

Relator did not maintain any such ownership interest. Relator states that he discovered he did not

hold any ownership interest in Krause-Albee Trucking after divorce from his then spouse, when his attorney contacted defendants to request Krause-Allbee Trucking's financial statements.

Specifically, Relator alleges that Krause filed documents with the FSA or the United States Department of Agriculture or both in 2002, indicating that Relator and his then spouse owned stock in Krause-Allbee Trucking. Krause also allegedly signed and submitted to the FSA a document stating that Relator designated Krause-Allbee Trucking to receive FSA payments to which Relator was entitled. The same Farm Operating Plan listing ownership interests in Krause-Allbee Trucking was again filed in 2003 with the FSA. In 2004, 2005, and 2006, Relator alleges that Krause filed documents with the FSA, stating Relator and his then spouse held the same ownership interests in Krause-Allbee Trucking.

According to plaintiffs' Complaint, filings with the FSA on behalf of Krause-Allbee Trucking for 2007, 2008, and 2009 similarly list Relator and his then spouse as holding ownership interests in Krause-Allbee Trucking. Documents from 2009 include minutes of a corporate meeting dated January 14, 2009, indicating that Relator and his then spouse were the only stockholders of Krause-Allbee Trucking. Relator alleges that additional documents from 2009, including the Farm Operating Plan, list Relator and his then spouse as guarantors of a loan to Krause-Allbee Trucking from the First State Bank of Warner, but that both Krause and the First State Bank of Warner have represented that Relator never guaranteed such a loan. Relator further alleges that, from 2010-2015, Krause filed Farm Operating Plans with the FSA, listing Relator and his then spouse as holding ownership interests in Krause-Allbee Trucking.

In 2002, 2006, and 2009 the FSA sent Krause-Allbee Trucking letters confirming the stock ownership, stating that "[y]ou are 'actively engaged in farming' and eligible for payments

and benefits" and "Adjusted Gross Income provisions have been met based on your certifications." According to plaintiffs' Complaint, Krause-Allbee Trucking received subsidies from the FSA of $307,924 in 2008, $62,506 in 2009, $347,134 in 2010, $72,205 in 2011, $258,104 in 2012 and $108,585 in 2013. Plaintiffs' Complaint argues that the alleged false statements regarding ownership interests were material to the FSA's grant of farm subsidies, because Krause's payments would have otherwise been capped by limits on an individual's receipt of farm subsidies. By listing Relator and his then spouse as owners of Krause-Allbee Trucking, plaintiffs' Complaint alleges that "[d]efendants were able to receive farm subsidy payments to which they would not have been entitled if Krause and his wife were listed as the owners of Krause-Allbee Trucking."

Plaintiffs' Complaint further states that Krause may have filed similar statements on behalf of Krause-Allbee Farming, Inc. or L&L General Partnership or both, and that these entities, along with K&L Land & Cattle, LLC, received subsidies from the FSA based on Farm Operating Plans submitted to the FSA.

Plaintiffs filed claims for relief under the FCA, 31 U.S.C. § 3729(a)(1), (i) for presenting a false claim for payment or approval, (ii) making or using a false record or statement material to a false claim, (iii) conspiring to defraud the Government, and (iv) using a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government (also called a "reverse false claim"). Plaintiffs' Complaint also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 for Relator regarding his ownership interest in Krause-Allbee Trucking, as well as a claim of unjust enrichment against defendants for receiving payments from farm subsidy programs on Relator's behalf.

Defendants move to dismiss plaintiffs' claims based on the statute of limitations codified in the FCA at 31 U.S.C. § 3731(b), stating that the six-year limitation on claims bars "the majority of" plaintiffs' claims. Defendants also submit that plaintiffs' Complaint failed to meet the plausibility requirement of Fed. R. Civ. P. 8(a) and the particularity requirement of Fed. R. Civ. P. 9(b) for fraud claims. Defendants further argue that plaintiffs' conspiracy claim is barred by the intracorporate conspiracy doctrine. Relator's request for declaratory judgment, defendants state, must be dismissed if the FCA claims are dismissed, as the Declaratory Judgment Act does not provide an independent basis for jurisdiction. Finally, defendants argue that Relator's claim for unjust enrichment must be dismissed, stating that Relator has not pled the elements required for such a claim. These arguments are addressed in turn below.

Plaintiffs filed an opposition to the motion to dismiss requesting, in the alternative, leave to amend the Complaint.

## DECISION

### I. The applicable statute of limitations under the FCA, 31 U.S.C. § 3731(b)

A motion to dismiss may be granted "when a claim is barred under a statute of limitations." Bradley Timberland Res. v. Bradley Lumber Co., 712 F.3d 401, 406 (8th Cir. 2013) (*citing* Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004)). A court may dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6) when it appears from the face of the complaint that the claim is time-barred and no facts are alleged to avoid the bar of the statute. Wong v. Wells Fargo Bank N.A., 789 F.3d 889, 897 (8th Cir. 2015) (*citing* Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 1995)); Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir.2004); and Brictson v. Woodrough, 164 F.2d 107 (8th Cir. 1947). In deciding a motion to dismiss under

Fed. R. Civ. P. 12(b)(6), a court must assume "all facts in the complaint to be true" and must construe "all reasonable inferences most favorably to the complainant." U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Finance, Corp., 690 F.3d 951 (8th Cir. 2012) (*citing* B & B Hardware, Inc. v. Hargis Indus., Inc., 569 F.3d 383, 387 (8th Cir.2009); and Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir.2008)).

Assuming that all of the facts in plaintiffs' Complaint are true and drawing inferences in plaintiffs' favor, plaintiffs' claims allege that defendants may have committed violations of the FCA each year from 2002-2015. However, 31 U. S. C. § 3731(b) provides that a civil action may not be brought under the FCA

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
> whichever occurs last.

Whether 31 U. S. C. § 3731(b)(1) or (b)(2) applies in the instant case, then, determines whether false claims submitted after 18 July 2010 or 18 July 2006 remain viable. Because it is clear from the face of the Complaint that plaintiffs plead claims that may be barred by the statute of limitations—specifically, any false claims allegedly submitted by defendants prior to either of these dates—we may decide this issue as raised in the defendants' motion to dismiss.

Plaintiffs and defendants acknowledge that where, as here, the government declines to join a civil action brought by a private person, the Eighth Circuit has not determined which limitations period applies. Moreover, circuit courts are split on this issue. As a question of first impression in our circuit on which a number of courts are in disagreement, then, this Court

undertakes a review of rationale given by leading opinions regarding which statute of limitations applies to private actions brought under the FCA.

Why Congress has not acted over a period of 25 years to address all these questions and different interpretations of the statute is a mystery to me. This inaction is a detriment to litigants and the courts.

### a. Interpretations of 31 U.S.C. § 3731(b) in the Eighth Circuit

In their motion to dismiss plaintiffs' claims as barred by the statute of limitations, defendants state that the six-year limitation applies here, "as the three-year limitation applies only to the government." In support of this statement, defendants cite an unreported case (U.S. ex rel. Read v. Central Plains Clinic, 1998 WL 663330 (D.S.D. 1998)), an Eighth Circuit case in which the six-year statute of limitations was not on appeal and so not considered in the Court's decision (Baycol Prods. Litig., 732 F.3d 869 (2013)), and two cases from the District of Minnesota which cite an Eighth Circuit case, Joshi, as precedent (U.S. ex rel. Dicken v. Nw. Eye Center, P.A., 2017 WL 2345579 (D. Minn. 2017); and U.S. ex rel. Sammarco v. Ludeman, 2010 WL 681454 (D. Minn. 2010) (unreported)). The Court in Joshi, however, in fact declined to decide whether § 3731(b)(2) applies where the government does not intervene (U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 559 (8th Cir. 2006)). There is no case law that otherwise determines how this Court must decide this issue.

Courts have recognized three approaches to interpreting how the statute of limitations in 31 U.S.C. § 3731(b) applies to actions brought by a private person in which the government declines to intervene. The first approach, which defendants argue this court should adopt, interprets § 3731(b)(2) as applying to the government only and as inapplicable in cases where the

6

government does not intervene. U.S. ex rel. Sanders v. N. Am. Bus. Indus., Inc., 546 F.3d 288 (4th Cir. 2008). The second approach asserts that private parties are entitled to the 10 year statute of limitations § 3731(b)(2) and that the limitations period begins on the date the government should have known of facts material to the right of action. U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., 474 F.Supp.2d 75 (D.D.C. 2007). Finally, the third approach is that the private party stands in for the government where the government declines to intervene, and that the limitations period begins to run on the date that the plaintiff knew or should have known the facts relevant to the right of action. U.S. ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211 (9th Cir. 1996).

### b. First approach: Limiting private plaintiffs to the six year limitations period

In Sanders, the Fourth Circuit decided that, based upon a claimed plain reading of § 3731(b), it is clear that Congress intended clause (b)(2) of that section to apply only to cases in which the government is a party, as reading clause (b)(2) to apply when the government is not a party produces the "bizarre" result in which "the limitations period in a relator's action depends on the knowledge of a nonparty to the action." U.S. ex rel. Sanders v. N. Am. Bus. Indus., Inc., 546 F.3d 288, 293 (4th Cir. 2008). Such an interpretation of the government's awareness of facts relevant to the claim "does not notify the relator of anything, so that knowledge cannot reasonably begin the limitations period for a relator's claims." Id. at 294. Moreover, the government official responsible for acting on such knowledge cannot "be charged with any responsibility other than to see that the government brings or joins an FCA action within the limitations period." Id. There is no responsibility for such official to assume that a private party will bring an FCA action.

The Fourth Circuit further explains that, following the Supreme Court's decision in Graham, it is clear that the reference to a "civil action" in § 3731(b)'s preface should not be interpreted to mean that all civil actions are covered by each clause of § 3731(b), but rather that "only a subset of civil actions may benefit from the extended limitations period in § 3731(b)(2)—those in which the government is a party." *Id.* at 295 (*citing* Graham Cty. Soil & Water Conservation Dist. v. ex rel. Wilson, 545 U.S. 409, 411 (2005)). The Fourth Circuit notes that § 3731(b)(2) is almost identical to another federal statute, 28 U.S.C. § 2416(c), which "tolls the generally applicable statute of limitations in actions brought by the United States—and only by the United States—until 'facts material to the right of action' are actually or constructively known by an 'official of the United States charged with the responsibility to act in the circumstances.'" Sanders at 294 (internal citations omitted). It is argued then that Congress transcribed language enacted in 28 U.S.C. § 2416(c), which applies only to the government, when adopting § 3731(b)(2), suggesting that Congress intended § 3731(b)(2) to similarly only apply to the government.[1] *Id.*

Interpreting § 3731(b)(2) to apply to private plaintiffs could result in unfavorable outcomes. In addition to requiring defendants, in asserting a statute of limitations defense, "to seek out and litigate the identity and knowledge of a government official not a party to the action," it would also allow private plaintiffs to delay in filing an action, increasing their own recovery in doing so and rendering the six-year statute of limitations in § 3731(b)(1) superfluous. *Id.* at 295. A private plaintiff's failure to timely file a claim may also cause the government to

---

[1] This Court notes that, as articulated by the District Court in U.S. ex rel. Griffith v. Conn, 15 U.S.C. § 78u–6 ("Securities whistleblower incentives and protection") also contains language similar to that included in § 3731(b)(2) that, like 28 U.S.C. § 2416(c), applies only to the government. 117 F.Supp.3d 961 (E.D.Ky. 2015).

lose the opportunity to bring a criminal action for the fraud, which must be filed "within five years of the violation," although this outcome could also occur in the event a plaintiff exercises the full six-year limitations period set forth in § 3731(b)(1). *Id.* (*citing* 18 U.S.C. §§ 287, 3282). In the present case, there is no search required because the FSA operates in Aberdeen, S.D., and is readily available to litigants.

Sanders notes that the majority of federal circuit and district courts follow an approach which limits private plaintiffs to a six-year statute of limitations under the FCA. *Id.* at 296. While Sanders does not engage in an exhaustive inquiry into congressional intent and statutory history, the Fourth Circuit looks to the Tenth Circuit's decision in Sikkenga to support its argument that § 3731(b)(2) is adopted from 28 U.S.C. § 2416(c). In Sikkenga, the Tenth Circuit, outlining the different approaches to interpreting § 3731(b), acknowledges that the plain language of the statute "is ambiguous," and thereafter performs a lengthy statutory analysis, ultimately determining "that § 3731(b) was not intended to apply to private qui tam relators at all." U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah, 472 F.3d 702, 722, 725 (10th Cir. 2006). Sanders leverages this analysis in its decision. In fact, it is virtually impossible to determine what Congress intended.

**c. Second approach: the government's knowledge determines the limitations period**

In U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, the District Court for the District of Columbia held that the statute of limitations should begin to run when the government becomes aware of facts material to the claim. The District Court opined that, because § 3731(b)(2) does not explicitly exclude private plaintiffs, and because the phrase "whichever occurs last" appears, as offset, to apply both to § 3731(b)(1) and (b)(2), the prefatory language

"[a] civil action" should render both (b)(1) and (b)(2) as applying to all civil claims. U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., 474 F.Supp.2d 75, 84, 85 (D.D.C. 2007). However, as discussed above, the Supreme Court expressly rejected this interpretation of § 3731(b)'s preface in Graham, and this Court is unpersuaded that any other reading would require interpreting "whichever occurs last" as applying only to § 3731(b)(2) as the District Court argues. Rather, it is clear that "whichever occurs last" determines which limitations period should apply should the government choose to intervene in a claim brought by a private plaintiff, in line with the Supreme Court's reading in Graham that "[a] civil action" does not include all civil actions.

After determining that the legislative history of the statute "shows, if anything, a desire to ensure that the government's rights are not impaired by the conduct of some other person," the Pogue opinion further reasons that § 3731(b)(2) could not apply to a private plaintiff, because this would result in a situation where "the government could conceivably find itself time-barred when it intervenes in a *qui tam* case in which a relator waited more than three years to bring suit." *Id.* at 87. This reasoning assumes that, in cases where the government does intervene, the government would not receive the benefit of a plain reading of the statute, contrary to the Pogue Court's own rationale for its interpretation of § 3731(b)(2). The Pogue Court observed that, interpreting § 3731(b)(2) such that the government is only bound by its own knowledge where it intervenes, would "allow the government to change the applicable limitations period by deciding to intervene," an outcome the Court characterizes as "unusual." However, I see nothing unusual in this outcome. As implicitly acknowledged by the Sanders decision, in a case brought by a private party, the private party will typically control when the government discovers the facts material to the right of action. Pursuant to § 3730(b), the government may elect to intervene in

the action within 60 days (subject to permitted extensions) of the plaintiff filing its complaint. The complaint is not served on the defendant until ordered by the court. 31 U.S.C. § 3730(b)(2). The applicable statute of limitations, if at issue, could be apparent shortly after a private plaintiff files its complaint.

It is clear from the discussion in <u>Sanders</u> (outlined above) that interpreting § 3731(b)(2) as applying to the government only results in outcomes that are unfavorable to the timely filing of suit, the government's rights to pursue fraud claims, and the convenience of both plaintiffs and defendants. Although <u>Pogue</u> takes issue with the rationale provided in decisions that follow <u>Sanders</u> that, were a private plaintiff not limited to the six year limitations period, that plaintiff might sleep on the claim, this argument is unconvincing. The <u>Pogue</u> decision argues that the first to file rule and public disclosure bar encourage private plaintiffs to file claims rapidly. <u>U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.</u>, 474 F.Supp.2d 75, 84, 88 (D.D.C. 2007). However, for many private plaintiffs, as here, the likelihood of the fraud they have knowledge of becoming public or being acted on by another party is limited. Moreover, plaintiffs that are the original source of information for such fraud will be able to exercise an exception to the public disclosure bar. For the reasons stated here, this Court does not find the approach put forward by the District Court in <u>Pogue</u> persuasive.

### d.  Third approach: the plaintiff's knowledge determines the limitations period

The third approach to interpreting § 3731(b)(2) is that, in cases where the government chooses not to intervene, the plaintiff stands in for the government and the limitations period begins to run on the date the plaintiff knew or should have known the facts relevant to the right of action. In <u>Hyatt v. Northrop Corp.</u>, the Ninth Circuit adopted this approach, relying, however,

on the same argument, perhaps refuted by the Supreme Court's Graham decision, put forward by Pogue: that the prefatory language of § 3731(b) referring to "[a] civil action" should be read so that both §§ 3731(b)(1) and (b)(2) apply to any civil actions. U.S. ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1214 (9th Cir. 1996). Noting that the legislative history is "at best ambiguous," particularly with regard to the use of the word "government," the Ninth Circuit posits that inconsistent use of "government" "is actually consistent with the [Court's] theory of the Act because *qui tam* plaintiffs are merely agents suing on behalf of the government, which is always the real party in interest." *Id.* at 1215. This Court agrees with the Ninth Circuit that the private plaintiff filing an FCA claim stands in for the government's interest. The Ninth Circuit's finding that the legislative history is ambiguous provides sufficient rationale to render this general observation dispositive in determining which limitations period applies to a plaintiff's claim in which the government does not intervene. I prefer to base my decision here on matters of equitable tolling and the facts of the present case.

The Ninth Circuit reasoned that equitable tolling, codified for the government in the FCA at § 3731(b)(2), should similarly be available for a private plaintiff. *Id.* at 1216. I agree with that proposition. The Ninth Circuit cited legislative history only in support of equitable tolling on the government's behalf. The fact that a federal statute sets a time limitation for a suit "does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with legislative purpose" and I agree with that as well. Am. Pipe & Const. Co. v. Utah, 414 U.S. 538, 559 (1974). This is despite the fact that neither the legislative history nor the text of the statute clearly provide for such a right for a particular party, to the extent that one party must be substituted for another explicitly provided that right.

Moreover, I note that claims for equitable tolling apply where a plaintiff has been pursuing his

rights diligently and where "extraordinary circumstances" prevented timely filing. Menominee

Indian Tribe of Wisconsin v. U.S., 136 S.Ct. 750, 755 (2016) (internal citations omitted). All of

that exists here.

The defendants were in charge of the defendant corporation's action and had sole control

of corporate records. Mr. Krause misrepresented many times in writing and under oath the status

of Relater and his then wife. It is possible, of course, that Relater and his then wife had rights,

obligations, and legal status which were altered as a result of the divorce to shield corporate

assets from any claims of Relator. These are questions of fact to be later determined. This is true

also as to whether any guarantees of corporate debt were involved. I cannot imagine a clearer

case in which equitable tolling should be used.

There is another logical reason why the longest period of tolling should be used. If the

Court has erred in not using a six year statute of limitations and the case is tried with an award

including more than a six year period, the case would be retried. I realize that the use of

interrogatories to the jury may prevent this, but that remains to be seen.

**e. The third approach as modified as set forth above should apply in the Northern**
**Division of the District of South Dakota**

It is clear from this overview of interpretations of § 3731(b) that the plain meaning of the

statute is ambiguous. Moreover, given the breadth of interpretations of the legislative history of

this statute, we are persuaded that it is equally as ambiguous. While the plain language of a

statute is the starting point for statutory interpretation, and the purpose of statutory interpretation

"is to give effect to the intent of Congress," canons of statutory interpretation "need not be

conclusive" and "other circumstances evidencing congressional intent can overcome their force." U.S. v. Milk, 281 F.3d 762, 766, 767 (8th Cir. 2002); U.S. v. McAllister, 225 F.3d 982, 986 (8th Cir. 2000) (internal citations omitted); and Chickasaw Nation v. U.S., 534 U.S. 84, 94 (2001). This is undoubtedly so where, as here, both the plain language of the statute and legislative history are unclear. The third approach, as modified, should be used in the Northern Division of the District of South Dakota in FCA cases in which the government does not intervene. In light of this determination, the Court finds that any false claims alleged by plaintiffs to have been made by defendants prior to 18 July 2006 are barred by the statute of limitations.

## II. The complaint must plead claims for fraud plausibly and with particularity

In order to survive a motion to dismiss for failure to state a claim on which relief can be granted, the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (internal citations omitted). A plausible claim must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted). A prima facie case under the FCA requires that "(1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Finance, Corp., 690 F.3d 951, 955 (8th Cir. 2012) (*citing* U.S. v. Basin Elec. Power Coop., 248 F.3d 781, 803 (8th Cir. 2001)). Liability under the FCA attaches to the claim for payment, rather than the underlying fraud. Baycol Prods. Litig., 732 F.3d 869, 874 (8th Cir. 2013).

Under the FCA, a defendant must have "actual knowledge," act "in deliberate ignorance of" or have "reckless disregard of the truth or falsity of the information" in presenting a

materially false claim. <u>Baycol Prods. Litig.</u>, 732 F.3d at 875; 31 U.S.C. § 3729(b)(1)(A). Proof of specific intent to defraud the government is not required. <u>U.S. ex rel. Quirk v. Madonna Towers, Inc.</u>, 278 F.3d 765, 767 (8th Cir. 2002). Further, the "knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, is imputed to the corporation itself." <u>Acme Precision Products, Inc. v. Am. Alloys Corp.</u>, 422 F.2d 1395, 1398 (8th Cir. 1970).

The heightened pleading standard for fraud under Fed. R. Civ. P. 9(b) applies to claims brought under the FCA, to include reverse false claims. <u>Raynor</u> at 956; and <u>Olson v. Fairview Health Services of Minnesota</u>, 831 F.3d 1063, 1073 (8th Cir. 2016). Under Rule 9(b), a party "must state with particularity the circumstances constituting fraud." <u>Raynor</u> at 956. (internal citations omitted). "To meet this standard," the plaintiff's complaint "alleging fraud 'must identify who, what, where, when, and how.'" <u>Id.</u> (internal citations omitted). Pleading with the requisite particularity includes the requirement to plead the materiality of the false claims to payment. <u>Olson</u> at 1070; and <u>Universal Health Services, Inc. v. U.S., ex rel. Escobar</u>, 136 S.Ct. 1989, n.6 (2016). When a claim is based on facts "peculiarly within the opposing party's knowledge," allegations may be pled "on information and belief" so long as they are "accompanied by a statement of facts on which the belief is founded" and the pleader identifies "efforts made to obtain additional information." <u>Drobnak v. Andersen Corp.</u>, 561 F.3d 778, 784 (8th Cir. 2009) (internal citations omitted). This relaxed standard, though, does not remove the plaintiff's requirement to plead "the equivalent of the first paragraph of any newspaper story." <u>Id.</u>

When a plaintiff alleges a systematic practice of fraud, the plaintiff need not allege details of "every alleged fraudulent claim" but, if the defendants actions could, but may not necessarily have led to the submission of false claims, must provide "*some* representative examples of [the defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors" within the statute of limitations. U.S. ex rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 555, 557 (8th Cir. 2006) (affirming lower court's dismissal of complaint and refusal of leave to amend where plaintiff's specific claims of fraud were barred by the statute of limitations); and U.S. ex rel. Thayer v. Planned Parenthood of the Heartland, 765 F.3d 914, 918 (8th Cir. 2014) (clarifying the scope of the Joshi ruling). A plaintiff may satisfy the particularity requirement of Rule 9(b) in cases of systematic fraud without pleading representative examples of false claims where the plaintiff pleads "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted," such as "by pleading details about the defendant's billing practices and pleading personal knowledge of the defendant's submission of false claims." Thayer at 918.

In light of this Court's determination regarding the applicable limitations period for plaintiffs' FCA claims, Relator's allegations of false claims defendant submitted on or after the date when "barring" first occurs must be pled with the requisite plausibility and particularity to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). This date is 18 July 2006. The Complaint alleges that defendants filed Farm Operating Plans "and other documents" every year from 2006 to 2015 indicating that Relator and his then spouse were each 50% shareholders in Krause-Allbee Trucking. In opposition to defendants' motion to dismiss, Relator appends Farm Operating Plans dated June 13, 2006, July 26, 2007, May 19, 2009, May 12, 2010, June 6, 2011,

and July 23, 2013, as well as minutes of corporate meetings dated January 15, 2007, January 14, 2008, and January 14, 2009, among other documents. This Court will not consider facts pled by Relator outside of the statute of limitations as representative examples or fulfilling the requisite particular details of a pattern of fraud as such fraud must nonetheless not be time-barred. Joshi at 555. However, this Court considers the Farm Operating Plans as potentially representative examples of fraud which Relator alleges defendants committed from 2006-2015.

### a. The Court may consider Farm Operating Plans and 2009 corporate minutes submitted by Relator

When on a motion to dismiss for failure to state a claim, extrinsic evidence outside the pleadings is considered by the court, the motion must be treated as one for summary judgment. Mattes v. ABC Plastics, Inc., 323 F.3d 695, n.4 (8th Cir. 2003). However, a district court may consider materials "necessarily embraced by the pleadings." Id. (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999)). When deciding a motion to dismiss, the court "may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions." Kushner v. Beverly Enters., Inc., 317 F.3d 820, 831 (8th Cir. 2003). Where a party "has actual notice of all the information in [a] movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991). Because the Complaint refers to the Farm Operating Plans and 2009 minutes of a corporate meeting, copies of which are included in the opposition to defendants' motion to dismiss, this Court will consider the Farm Operating Plans and 2009 minutes of corporate meeting without converting this motion to one for summary judgment. This

Court need not consider the 2007 or 2008 minutes of meetings, as they are not mentioned in the Complaint.

The Farm Operating Plan dated June 13, 2006, is outside of the statute of limitations as the limitations period under the False Claim Act § 3731(b)(1) begins to run on "the date the false claim was actually submitted." Graham Cty. Soil & Water Conservation Dist. v. ex rel. Wilson, 545 U.S. 409, 415 (2005). The 2007 Farm Operating Plan is an update to the 2006 Farm Operating Plan and indicates no change to the share ownership provided therein: John Millin, 32%; Lori Millin, 43%; and Brian Ellison, 25%. The 2009 Farm Operating Plan is signed by Larry Krause and Lori A. Millin, who is listed as "President – Director" with Relator listed as "Vice President – Director," and each as holding 50% ownership in Krause-Allbee Trucking. The 2009 Farm Operating Plan lists Lori Millin as maintaining 50% "Active Personal" management of the company, with Relator maintaining 25% "Active Personal" management. Relator's management is described as including participating in management meetings and being responsible for major decisions. The plan also states that Lori and Relator are guarantors of a loan at "First State Bank of Warner in Warner, SD." The 2009 minutes of corporate meeting list Lori and John Millin as the only stockholders and directors. The 2010 and 2011 Farm Operating Plans are re-certifications of the 2009 Farm Operating Plan, signed by Lori A. Millin. The 2013 Farm Operating Plan, signed by Larry Krause on July 23, 2013, maintains the same ownership and active personal management interests in Krause-Allbee Trucking for both Lori Millin and Relator as stated in the 2011 plan. Relator includes correspondence from Krause's counsel, Kennith Gosch, dated June 22, 2015, stating that "John Millin is not now nor has he ever been a shareholder" in Krause-Allbee Trucking, as well as a letter from First State Bank, dated August

17, 2015, that states that "John Millin is not a guarantor for any obligation of Krause-Allbee Trucking." It appears to be undisputed that false information was submitted to the government many times.

The Complaint alleges that "[u]pon information and belief, documents filed in 2007, 2008, and/or 2009 with the FSA by Krause-Allbee Trucking, including Farm Operating Plans, show a similar ownership structure to that as stated in 2006." Further, the Complaint states that "[u]pon information and belief, Krause filed documents, including but not limited to Farm Operating Plans, in 2010 and 2011 on behalf of Krause-Allbee Trucking indicating that there were no ownership changes for 2010 and 2011" from the 2009 filings. The Complaint also alleges that "[u]pon information and belief," Krause filed 2012, 2013, 2014, and 2015 Farm Operating Plans indicating that Relator held a 50% ownership in Krause-Allbee Trucking. Allegations may be pled on information and belief when facts are, as here, likely to be "peculiarly within the opposing party's knowledge," but such belief must be accompanied by facts justifying the belief and a statement identifying "efforts made to obtain additional information." Drobnak at 784. Relator supports the allegation that defendants filed Farm Operating Plans in 2007, 2009, 2010, 2011 and 2013 indicating Relator's ownership in Krause-Allbee Trucking with a copy of those plans. The opposition to defendants' motion to dismiss additionally identifies Relator's efforts, by way of e-mail communication through his counsel, to obtain additional information regarding his ownership interest from Krause. The 2007, 2009, 2010, 2011 and 2013 Farm Operating Plans are pled as representative of a scheme of fraud undertaken by defendants until 2015.

19

Relator has pled the "first paragraph of any newspaper story," meeting the heightened pleading requirements for Fed. R. Civ. P. 9(b) and plausibility requirements of Fed. R. Civ. P. (8)(a) for claims beginning in 2007. Krause or Lori Millin submitted Farm Operating Plans in 2007, 2009, 2010, 2011 and 2013 to the FSA for farm subsidies. The plans are stamped with the date of receipt by the Brown County FSA in Aberdeen as July 26, 2007, May 19, 2009, May 26, 2010, June 8, 2011, and July 29, 2013, respectively. These Plans indicate an ownership interest in Krause-Allbee Trucking for Relator of 32 to 50%, although attorney Gosch has stated that Relator was never a shareholder in the company. The 2009-2013 Farm Operating Plans also indicate that Relator participated in management meetings on a regular basis and was responsible for major decisions, although Relator states that he had no engagement of any kind with the company. Farm Operating Plans determine "payment eligibility and limitation determinations for farm subsidies" as is clear from the form documents.

Moreover, the form Farm Operating Plans contain a certification section that defendant Krause signed stating that "I certify that all information entered on this document . . . is true and correct," that "I understand that furnishing incorrect information will result in forfeiture of payments and may result in the assessment of a penalty," and that "it is my responsibility to timely notify FSA in writing of any changes that may affect these representations." It is clear that the requirements for a prima facie case under the FCA have been met by Relator, as Relator has demonstrated that (1) the defendants made claims against the United States—here, the FSA; (2) the claims were false or fraudulent in stating Relator's ownership interest; and (3) the defendants knew, or were at least in "reckless disregard of the truth or falsity of the information" of the claim. Relator has further sufficiently pled representative examples of a scheme of fraud—he has

clearly specified "the time, place, and content" of the fraudulent behavior as well as "the identity of the actors"—to warrant retaining claims from 2007 to 2015 inclusive. Joshi at 557. Relator need not plead personal knowledge of defendants' submission of false claims where, as here, he is able to meet the standard set forth by Joshi.

### b. Relator has demonstrated defendants' false claims were material to payment

Following Escobar, a motion to dismiss may also properly encompass the materiality of a defendant's false claims to the government's decision to pay a claim. The FCA defines materiality as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The fact that the government is entitled to refuse payment if aware of a violation, as is suggested by the certification provision of the Farm Operating Plans, is insufficient to meet the materiality requirement. Escobar at 2004. However, a false statement is considered material under the FCA if "either (1) a reasonable person would likely attach importance to it or (2) the defendant knew or should have known that the government would attach importance to it." U.S. ex rel. Miller v. Weston Educ., Inc., 840 F.3d 494, 503-4 (8th Cir. 2016). The ownership interest of individuals for an entity seeking benefits from the FSA, as well as their engagement in that entity, are central to the payment eligibility criteria for farm subsidies established in 7 CFR Part 1400 – Payment Limitation and Payment Eligibility. Indeed, "[i]dentifying who or what is participating and therefore how payments may be attributed is the cornerstone to most program eligibility." CONG. RESEARCH SERV., R44739, U.S. FARM PROGRAM ELIGIBILITY AND PAYMENT LIMITS 5 (2017). A reasonable person would therefore likely attach importance to the statement of ownership interests to the FSA in the Farm Operating Plan, and these considerations, in determining an individual's

eligibility for farm subsidies, undoubtedly influence the payment of farm subsidies by the government as required by § 3729(b)(4).

The pertinent regulations in force at the time the 2009, 2010, 2011 and 2013 Farm Operating Plans were submitted demonstrate that the defendants' false claims were material to the government's decision to pay claims. The version of 7 CFR Part 1400 in force in 2007 differs slightly from the versions discussed below, but is materially the same; differences are indicated with footnotes. The regulations codified at 7 CFR Part 1400 provide detailed guidance for the attribution of payments by the pro rata share of a person's interest in an entity, used to establish an individual's cumulative payments against their annual payment limits. 7 CFR § 1400.105.[2] Payment limitations per person are established in § 1400.1(f) and average adjusted gross income limitations are set forth in § 1400.500(a)-(d).[3] The payment eligibility requirements state that "[t]o be considered eligible to receive payments with respect to a particular farming operation, a person or legal entity must be actively engaged in farming with respect to such operation." 7 CFR § 1400.201. The requirement to be actively engaged in farming has evolved since its inclusion in the 1987 Farm Program Payments Integrity Act, but continues to be an area in which the government has recognized potential for fraud. CONG. RESEARCH SERV., R44656, USDA'S ACTIVELY ENGAGED IN FARMING (AEF) REQUIREMENT 3 (2016) (stating that the actively engaged in farming requirement may "facilitate[e] the creation of new farm operation members simply to expand an operation's farm payment receipts.") Requirements for active engagement in farming are established separately for different entities or individuals engaged in farming operations.

---

[2] While the 2007 regulations do not provide guidance for the attribution of payments, payment limitations per person are "applied on a 'direct attribution' method with respect to the individual or entity." § 1400.1(g), n.1.
[3] *See* §§ 1400.1(g), 1400.600 (2007).

What follows looks at the provisions governing potentially relevant entities for the current instance.

For a farming operation conducted predominately by family members, in order to be actively engaged in farming, the adult family member must

> (1) [h]ave a share of the profits or losses from the farming operation commensurate with such person's contribution to the operation and (2) [m]ake contributions to the farming operation that are at risk for a loss, with the level of risk being commensurate with such person's claimed share of the farming operation. 7 CFR § 1400.208.[4]

Contribution is defined as "providing land, capital, or equipment assets, and the actions of providing active personal labor or active personal management to a farming operation in exchange for, or with the expectation of, deriving benefit based solely on the success of the farming operation." 7 CFR § 1400.3. Active personal management includes "general supervision and direction of activities" or "[s]ervices reasonably related and necessary to the farming operation," which could potentially not require physically visiting the farming operation. However, taking Relator's allegations as true that Relator had no engagement of any type with the farming operation nor contributed any capital or other assets, this Court must presume for the purposes of deciding the motion to dismiss that Relator was not "actively engaged in farming," and that he otherwise made no "contributions to the farming operation."

The requirement to be actively engaged in farming adheres for members of a corporation, with the additional requirement that the "active personal labor and active personal management" is "(i) [p]erformed on a regular basis; (ii) [i]dentifiable and documentable; and (iii) [s]eparate

---

[4] The 2007 regulations state that "an adult family member who makes a significant contribution of active personal management, active personal labor, or a combination of active personal labor and active personal management shall be considered to be actively engaged in farming." The 2007 regulations do not define contribution. This does not change the analysis in the present paragraph.

and distinct from such contributions of any other . . . member of the farming operation." 7 CFR § 1400.204(a)(2)(i)-(iii).[5] As of 2011, an exception to the requirement that a member be actively engaged in farming exists where "[a]t least 50 percent of the stock is held by . . . members that are actively providing labor or management." 7 CFR § 1400.204(a)(2), (c)(1). It is also possible, as of 2011, for one spouse to contribute either active personal labor, active personal management, or a combination of these for both spouses. 7 CFR § 1400.204(a)(2). While the 2009, 2010, 2011 and 2013 Farm Operating Plans state that Lori Millin will "be responsible for the minor decisions," to include "financial" and "tax decisions," and will take responsibility for "the planning and direction of the farming operation," to include "mak[ing] the cattle buying decisions," "the major decisions," and "participat[ing] in management meetings on a regular basis," defendants provide no indication that Lori Millin was actively providing labor or management or otherwise seek to counter Relator's argument that these statements were fraudulently made. The 2007 Farm Operating Plan provides no indication that Lori or John Millin provided any management function. Since Relator states that his then-wife was not "actively engaged in the management of any farming operations" for the duration of his marriage, accepting his allegations as true, this Court must also presume that Lori Millin was not "actively providing labor or management" to the farming operation for the purpose of this motion to dismiss.

Like the exception for spouses included under corporations, as of 2009, a provision in the regulation under "Persons" indicates that where one spouse is actively engaged in farming the other spouse need not be. 7 CFR § 1400.202(b). However, this provision specifically references

---

[5] This clarification does not exist in the 2007 regulations; however, this does not change the analysis in this paragraph.

such spouse's active engagement in farming as fulfilling the other spouse's requirement to do so under § 1400.202(a)(1)(ii). It therefore does not nullify the requirement in the same section for each spouse to provide capital as provided in paragraph (a)(1)(i). Nor do we read this provision alongside the less restrictive requirements for family members under § 1400.208 or spousal members of a corporation under § 1400.204(a)(2) as suggesting that neither spouse is required to contribute capital to the farming operation. This Court notes that neither party has alleged that any property, to include marital property, was contributed to Krause-Allbee Trucking's farming operations by Lori or John Millin to fulfill the active personal management requirement. While the 2007 Farm Operating Plan states that Lori and John Millin contributed 846.4 acres of leased land to the farming operating for $50 per acre, and while such lease of land to the farming operation may be sufficient to satisfy the requirement for capital under 7 CFR § 1400, the spousal exception described here was not available in 2007, and defendants allege in the 2009 Farm Operating Plan that the cash-rent tenant rule is not applicable as John and Lori Millin will contribute active personal management. Nor is the loan with the First State Bank of Warner sufficient to satisfy the capital requirement, as any loan provided by a person to fulfill paragraph (a)(1)(i) must not be co-signed or guaranteed by "[a]ny other person" that "has an interest in such farming operation." The 2009, 2010, 2011 and 2013 Farm Operating Plans, however, list both John and Lori Millin as guarantors for the loan from the First State Bank of Warner, and Lori Millin is also listed as having an ownership interest in Krause-Allbee Trucking. Moreover, given Relator's allegations, representations regarding the loan must be presumed to be false.

The provisions of 7 CFR Part 1400 moreover provide that "[a]ny change in a farming operation that would increase the number of persons or legal entities to which the provisions of

this part apply must be bona fide and substantive." 7 CFR § 1400.104.[6] It contains specific

provisions for refunding payments received "if the person or legal entity fails to comply with the

provisions of this part and adopts or participates in adopting a scheme or device designed to

evade this part." 7 CFR § 1400.5.[7] Defendants should have been aware, then, that the

government would attach importance to the ownership interests in Krause-Allbee Trucking

indicated on the Farm Operating Plan.

For the above reasons, this Court finds that (1) a reasonable person would likely attach

importance to the ownership interests indicated on the Farm Operating Plans submitted to the

FSA and (2) defendants should have known the government would attach importance to those

representations. The false claims were then material to the government's decision to pay claims.

This determination, alongside the determination that plaintiffs have pled representative examples

of a prima facie case under the FCA, leads this Court to the conclusion that plaintiffs have

clearly pled facts for fraud in connection with Krause-Allbee Trucking's claim for farm subsidies

from 2007-2015 with the requisite particularity and plausibility under the FCA's

§§ 3729(a)(1)(A) and (a)(1)(B).

However, because Relator has pled no facts, other than Krause's alleged ownership, with

regard to Krause-Allbee Farming, Inc., L&L General Partnership, and K&L Land & Cattle, LLC,

any claims involving these entities should be dismissed. Moreover, Relator's reverse false claim

under § 3729(a)(1)(G) should also be dismissed, as Relator has alleged no facts showing that

---

[6] *See* § 1400.109 (2007).

[7] The 2007 regulation reads slightly differently but is substantively the same: "All or any part of the payment otherwise due a person on all farms in which the person has an interest may be withheld or be required to be refunded if the person adopts or participates in adopting a scheme or device designed to evade this part or that has the effect of evading this part."

defendants' claims were either "material to an obligation to pay or transmit money or property to the Government" or that the defendants "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decreas[ed] an obligation to pay or transmit money or property to the Government." 31 U.S.C. §§ 3729(a)(1)(G); *see also* U.S. v. Q Intern. Courier, Inc., 131 F.3d 770, 773 (8th Cir. 1997) (holding that reverse false claims require that "a defendant must have had a present duty to pay money or property" to the government). Rather, Relator's Complaint alleges defendants received unearned subsidies from the FSA, not that defendants avoided paying money owed to the government. While it is possible that defendants could have reduced loan repayment rates for loans received through farm subsidy programs, Relator has not pled this claim with any specificity.

### III. Relator's claim for conspiracy under the FCA

Relator's final claim under the FCA is that Krause and Krause-Allbee Trucking "conspired with one another to defraud the government by getting false or fraudulent claims allowed or paid" in violation of 31 U.S.C. § 3729(a)(1)(C). Defendants state that this claim is barred by the intracorporate conspiracy doctrine. The Eighth Circuit has yet to determine the applicability of this doctrine to claims brought under the FCA. The intracorporate conspiracy doctrine, developed within the context of antitrust law, holds that a corporation cannot conspire with its employees, agents, or subsidiaries, as that would amount to conspiring with itself. *See, e.g.*, Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752 (1984). The doctrine "turns on specific antitrust objectives" and at least one district court has held that it is not available under the FCA. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 166 (2001); and U.S. ex rel. Harris v. Lockheed Martin Corp., 905 F.Supp.2d 1343 (N.D.Ga. 2012) (holding that the

intracorporate conspiracy doctrine does not apply to criminal conspiracies under 18 U.S.C. § 371 and that, because the conduct plaintiffs alleged would constitute a violation of both that statute and the civil liability provisions of § 3729(a), the intracorporate doctrine cannot shield the same conspiracy alleging criminal wrongdoing from civil liability); *see also* U.S. v. President and Fellows of Harvard College, 323 F.Supp.2d 151, n.40 (D.Mass. 2004) (stating that "it is questionable whether" the intracorporate conspiracy doctrine would apply to an FCA case but without ruling on the issue). On the other hand, a handful of district courts have extended the intracorporate conspiracy doctrine to bar claims for conspiracy under the FCA. *See* U.S. v. Gwinn, 2008 WL 867927, 24 (S.D.W.Va. 2008) (collecting cases). This includes two district court cases from the Eighth Circuit, which assume that plaintiffs in a claim for conspiracy under the FCA must plead facts of conspiracy outside the corporate structure in order not to be barred by the intracorporate conspiracy doctrine. U.S. ex rel. Scharber v. Golden Gate Nat'l Senior Care, LLC, 135 F.Supp.3d 944, 967 (D.Minn. 2015); and U.S. v. Cathedral Rock Corp., 2007 WL 4270784, 6 (E.D.Mo. 2007) (not reported). This Court is persuaded by the rationale provided by the Northern District of Georgia: because the intracorporate conspiracy doctrine does not apply to criminal conspiracy, and because the conduct that Relator alleges would constitute a violation of both 18 U.S.C. § 371 and the civil liability provisions of § 3729(a), the intracorporate conspiracy must not shield the same conspiracy from civil liability. *See e.g.*, McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1034 (11th Cir. 2000).

This Court also finds that Relator has plead a claim under 31 U.S.C. § 3729(a)(1)(C) with the particularity required of Fed. R. Civ. P. 9(b). The particularity requirement of Fed. R. Civ. P. 9(b) applies to conspiracy claims brought under the FCA. U.S. ex rel. Grubbs v. Kanneganti, 565

F.3d 180, 193 (5th Cir. 2009). To state a claim for conspiracy under § 3729(a)(1)(C), it must be shown that the conspirators intended "to defraud the government." Allison Engine Co., Inc. v. U.S. ex rel. Sanders, 553 U.S. 662, 672-3 (2008). Although "it is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government," the plaintiffs must establish "that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." Id. A plaintiff need not provide proof of express agreement, but must establish "a tacit understanding between the parties" which may be shown "wholly through the circumstantial evidence of each defendant's actions." Aguilar v. PNC Bank, N.A., 853 F.3d 390, 402 (8th Cir. 2017). Relator has pled facts of an agreement to support claims for conspiracy under § 3729(a)(1)(C) by furnishing the minutes of Krause-Allbee Trucking's corporate meeting, dated January 14, 2009. These minutes of corporate meeting indicate that both John Millin and his then spouse are stockholders and officers of Krause-Allbee Trucking. This Court finds that these minutes of meeting, in addition to the Farm Operating Plans submitted by defendants, provide sufficient circumstantial evidence to establish a tacit understanding that defendants intended to defraud the government to support claims for conspiracy under 31 U.S.C. § 3729(a)(1)(C). Because I also hold that the intracorporate conspiracy doctrine does not apply to claims under the FCA, the claim for conspiracy under the FCA should not be dismissed.

**IV. Declaratory judgment of ownership interests in Krause-Allbee Trucking**

This Court will not dismiss Relator's claims for declaratory judgment of Relator's current or former ownership interest in Krause-Allbee Trucking under 28 U.S.C. § 2201. As this Court will not dismiss all of Relator's claims under the FCA, independent federal jurisdiction exists as

required under 28 U.S.C. § 2201(a). Defendants argue that this Court should nonetheless dismiss the request for declaratory judgment as "Krause-Allbee Trucking's ownership" is "a matter of state corporate and common law." However, this Court's jurisdiction over Relator's claim is proper as a matter of supplemental jurisdiction and defendants put forward no other reason that this claim should be dismissed. 28 U.S.C. § 1367.

## V. Relator's claim for unjust enrichment

Pursuant to Fed. R. Civ. P. 8(d), a party may plead "2 or more statements of a claim or defense alternatively or hypothetically." Where alternative statements are made "the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). Moreover, a party "may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). This rule is also recognized in South Dakota. SDCL 15-6-8(a), (e). The fact that Relator's claim for unjust enrichment may be inconsistent with claims brought under the FCA is not a reason for dismissal.

In the instant case, Relator has pled a claim for unjust enrichment that is plausible on its face and that allows this court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Torti v. Hoag, 868 F.3d at 671. Unjust enrichment "occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.'" Hofeldt v. Mehling, 658 N.W.2d 783, 788 (S.D. 2003). To establish a prima facie claim for unjust enrichment in South Dakota, the plaintiff must claim that the defendant (1) received a benefit; (2) the defendant "was cognizant of that benefit"; and (3) "the retention of the benefit without reimbursement would unjustly enrich the recipient." Mack v. Mack, 613 N.W.2d 64, 69 (S.D. 2000). The relevant inquiry in determining whether the

30

recipient was unjustly enriched "is whether the circumstances are such that equitably the beneficiary should restore to the benefactor the benefit or its value." Dowling Family P'ship v. Midland Farms, 865 N.W.2d 854, 863 (S.D. 2015) (internal citations omitted). Further, "[a]n enrichment is unjust if it 'lacks an adequate legal basis; [i.e.,] it results from a transaction that the law treats as ineffective to work a conclusive alteration in ownership rights.'" Id. (internal citations omitted).

South Dakota state courts follow the Restatement of Restitution and Unjust Enrichment. See, e.g., FarmPro Services, Inc. v. Finneman, 887 N.W.2d 72 (S.D. 2016); Dowling Family P'ship, 865 N.W.2d 854 (S.D. 2015); Hofeldt, 658 N.W.2d 783 (S.D. 2003); Juttelstad v. Juttlestad, 587 N.W.2d 447 (S.D. 1998); Talley v. Talley, 566 N.W.2d 846 (S.D. 1997); and Hofer v. Bon Homme Hutterian Brethren, Inc., 109 N.W.2d 258 (S.D. 1961). While a claim for unjust enrichment may exist where a person "is unjustly enriched at the expense of another," "the consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." Restatement (Third) of Restitution & Unjust Enrichment § 1, cmt. a (Am. Law Inst. 2011). Where the breach of fiduciary duty is at issue, "the defendant's benefit is regarded as being 'at the plaintiff's expense' because it resulted in a wrong committed against him." Daniel Friedmann, Restitution of Benefits Obtained Through the Appropriation of Property or the Commission of a Wrong, 80 COLUM. L. REV. 504, 504 (1980).

Accepting Relator's factual allegations as true, if the claims against defendants do not succeed under the FCA, Relator has nonetheless pled a prima facie case for unjust enrichment. The defendants (1) received a benefit of subsidies for their farm operation and Relator has pled

31

that the inclusion of Relator's interest in Krause-Allbee Trucking on the Farm Operating Plans was material to the FSA's decision to issue those subsidies. Defendants, having drafted and submitted the Farm Operating Plans to the FSA, and received the subsidies, (2) were "cognizant of that benefit." Finally, as Relator was never compensated for the liquidation of his possible interest in Krause-Allbee Trucking, Inc., (3) "the retention of the benefit without reimbursement would unjustly enrich the recipient."

## VI. Relator's request to amend the complaint

A decision whether to allow a plaintiff to amend a complaint is "left to the sound discretion of the district court." Popoalii v. Correctional Medical Services, 512 F.3d 488, 497 (8th Cir. 2008) (internal citations omitted). Amendments may be denied where they unduly prejudice the non-moving party or would be futile. *Id.* Relator's request for leave to amend the Complaint in the brief in opposition to defendants' motion to dismiss violates one of the local rules in the District of South Dakota. D.S.D. LR 15.1. Without the court and defendants receiving a proposed amendment to the Complaint along with the motion to amend, granting the motion to amend would allow Relator leeway to state unexpected claims. Allowing such would be unduly prejudicial to the opposing party. The motion to amend should therefore be denied, without prejudice.

### ORDER

Now, therefore,

IT IS ORDERED:

1.Defendants' motion to dismiss, Doc. 32, is granted in part and denied in part. With regard to Count I -- False Claims Act § 3729(a)(1), Count II -- False Claims Act

§ 3729(a)(2), and Count III – Conspiring to Defraud the Government of plaintiffs'

Complaint, Doc. 1, defendants' motion to dismiss is granted for any claims prior to

July 18, 2006.

2. Defendants' motion to dismiss is granted in full for Count IV – Reverse False Claims

of plaintiffs' complaint.

3. Defendants' motion to dismiss Count V – Declaratory Judgment and Count VI –

Unjust Enrichment of plaintiffs' Complaint are denied.

4. Plaintiffs' request to amend the Complaint, Doc. 41, is denied, without prejudice.

Dated this **14**$^{th}$ day of April, 2018.

BY THE COURT:

Charles B Kornmann

CHARLES B. KORNMANN
United States District Judge

33